The document below is hereby signed.

Signed: December 18, 2015



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DAVID S. SCHUSTER AND MINDY G. SCHUSTER, | ) | Case No. 10-01175 |
| | ) | (Chapter 13) |
| | ) | **Not for Publication in** |
| Debtors. | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION RE TRUSTEE'S MOTION TO MODIFY CHAPTER 13 PLAN

This decision addresses the required duration of the debtors' most recently modified plan in this case under chapter 13 of the Bankruptcy Code (11 U.S.C.). The chapter 13 trustee's latest motion to modify the debtors' chapter 13 plan sought to increase the debtors' monthly payments to $9,900 based upon a substantial increase in the debtors' monthly income. In accordance with an oral decision announced by the court at a May 15, 2015 hearing, the court entered an order on June 26, 2015, modifying the plan to increase the required monthly plan payments to $4,400, and taking under advisement the question of when the final payment under the modified plan is due under 11 U.S.C.

§ 1329(c).[1] For reasons explained in more detail below, I conclude that the payment period under the modified plan expires 59 months after the first plan payment was due under 11 U.S.C. § 1326(a), and that the final payment is thus due no later than November 24, 2015, five years after the debtors filed their petition commencing the case.

I

When a debtor completes payments under a confirmed plan and meets certain other requirements, the debtor is entitled to receive a discharge of her dischargeable debts. 11 U.S.C. § 1328. The confirmed plan and the modified plans in this case have all been so-called variable rate plans (plans that do not call for full payment of allowed unsecured claims). Such plans cannot be confirmed over the objection of the trustee or the holder of an allowed unsecured claim unless:

> the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B). For some debtors the "applicable commitment period" may be as short as three years, but in this

[1] The debtors have also filed an *Emergency Motion to Determine Applicable Term of Modified Plan*, seeking a ruling on the matter that was taken under advisement. The *Motion* additionally seeks relief regarding the trustee's crediting of payments. Because the court does not have an evidentiary record before it regarding how payments have been credited by the trustee, it is premature to address that issue.

case the "applicable commitment period" is five years. So, in this case, § 1325(b)(1)(B) allowed the trustee (on behalf of unsecured creditors) to insist that the debtors' plan call for five years of payment of their projected disposable income as a condition to their being entitled to receive a discharge.

Stated another way, a debtor ought not be required to make such plan payments for longer than the applicable commitment period in order to obtain a discharge upon completing her plan payments. This idea is reinforced by other provisions of the Bankruptcy Code that place a limit on the duration of plan payments. In the case of debtors having the income profile of these debtors, 11 U.S.C. § 1322(d) provides that "the plan may not provide for payments over a period that is longer than 5 years." Similarly, 11 U.S.C. § 1329(c) establishes a limit on the duration of a modified chapter 13 plan by providing that:

> A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

The parties agree that the applicable commitment period under the debtors' plan is the statutory maximum of 5 years. Accordingly, under § 1329(c), the payment period under the debtors' newly modified plan will expire 59 months "after the time that the first payment under the original confirmed plan was due . . . ."

The debtors' original confirmed plan was a variable rate plan with a 60-month commitment period, total minimum funding of $78,000, and monthly payments of $1,300. The plan was confirmed on June 27, 2011, more than seven months after the petition date. Under the most recently modified plan, the debtors are now required to make monthly payments in the amount of $4,400 for the duration of the plan. The trustee contends that, pursuant to § 1329(c), the 60-month period under the debtors' modified plan is measured from the date the first plan payment was due *after confirmation* of the original plan, whereas the debtors contend that the 60-month period is measured from the date the first payment was due under § 1326(a), or 30 days after the filing of the petition. Pursuant to § 1326(a), "[u]nless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier"[2] regardless of when a plan is eventually confirmed.

Under the trustee's view of § 1329(c), the five-year term of the modified plan will expire 59 months after the first payment was due after confirmation of the original plan on June 27, 2011. Assuming that the first plan payment that came due postconfirmation was due on July 24, 2011, under the trustee's

---

[2] Pursuant to 11 U.S.C. § 301, "the commencement of a voluntary case . . . constitutes an order for relief . . . ."

view, the final plan payment under the modified plan would be due 59 months thereafter, or on June 24, 2016.[3] Under the debtors' view of § 1329(c), by contrast, the final plan payment would be due 59 months after the first plan payment was due under § 1326(a), in other words, 59 months after December 24, 2010, or November 24, 2015. The trustee's proposed calculation of the modified plan's duration extends the plan seven months beyond what the debtors claim is required of them, and would require the debtors to make an additional $30,800 in plan payments that the debtors contend they are not obligated to make.

The Fourth Circuit is the only circuit court to have addressed this issue. *See In re Costen*, 826 F.2d 1376 (4th Cir. 1987). In *Costen*, a creditor sought a denial of the debtor's discharge based upon the debtor having made his final chapter 13 plan payment, under a modified plan, approximately 62 months post-petition, and thus, according to the creditor, outside the 5-year statutory maximum repayment period provided for under §§ 1322(d) and 1329(c). Relying on *In re Eves*, 67 B.R. 964, 967 (Bankr. N.D. Ohio 1986), the *Costen* court concluded that all of the payments were timely under the modified plan, reasoning that

[3] The initial deadline for commencing payments under § 1326(a) was no later than 30 days after the filing of the petition, or December 24, 2010. The debtors were required to continue making monthly payments thereafter. For purposes of this decision, I will assume without deciding that the debtors' remaining 59 plan payments were due on the 24th day of each month following December 24, 2010.

any payments made by the debtor *prior* to confirmation of the original plan were payments due under the debtor's *unconfirmed* plan, not the debtor's original *confirmed* plan, and were thus excluded from the court's calculation of the modified plan's duration under §1329(c). *In re Costen*, 826 F.2d at 1378 n.3.

More recent decisions confirm that *Costen* remains good law in the Fourth Circuit. *See In re Morris*, 2014 WL 3818947 (Bankr. E.D.N.C. July 31, 2014) (treating *Costen* as binding precedent and permitting plan modification that extended the period of plan payments from 60 months to 75 months); *In re McClam*, 2009 WL 2928240 (Bankr. D. Md. Aug. 13, 2009) (citing to *Costen* as the rule in the Fourth Circuit and treating the date of confirmation of the original plan as the starting point for calculating the 60-month duration of a modified plan). *See also In re Martin*, 156 B.R. 47 (B.A.P. 9th Cir. 1993) (citing to *Costen*, in dicta, for the proposition that the 60-month period of a modified plan runs from the date the first payment becomes due after confirmation of the original plan).

Several courts outside of the Fourth Circuit, however, have disagreed with *Costen*, and have concluded that when calculating the maximum duration of a modified plan under § 1329(c), the 60-month period begins to run from the date on which the debtor was required to commence plan payments under § 1326(a). *See In re Profit*, 283 B.R. 567, 575 (B.A.P. 9th Cir. 2002) (the 60-month

period under § 1329(c) commences on the date the first plan payment is due pursuant to § 1326(a)(1)); *In re Evans*, 183 B.R. 331 (Bankr. S.D. Ga. 1995) (disagreeing with the reasoning of *Costen*, and holding that, when calculating the remaining duration of a modified chapter 13 plan under § 1329(c), the final payment must be due no later than 60 months from when the debtor was required to commence plan payments under 11 U.S.C. § 1326(a)(1)); *In re Ramsey*, 507 B.R. 736, 739 n.11 (Bankr. D. Kan. 2014) (citing to *In re Evans* and treating the date on which the first payment was due at the commencement of the case as the starting point for calculating the 5-year maximum duration of a modified chapter 13 plan under § 1329(c)); *In re Walters*, 223 B.R. 710 (Bankr. W.D. Mo. 1998) (discussing issue in context of addressing whether a modified plan has retroactive effect). *See also In re Musselman*, 341 B.R. 652 (Bankr. N.D. Ind. 2005) (discussing § 1329(c) in the context of addressing the calculation of plan duration under § 1322(d));[4] *In re Black*, 292 B.R. 694 (B.A.P. 10th Cir. 2003)

---

[4] To add to the confusion, at least one court has concluded that the 60-month period runs from the date on which the first plan payment was actually made, not when the first payment was due under § 1326(a). *In re Gurr*, 194 B.R. 474 (Bankr. D. Ariz. 1996) (adopting the “commencement of payments” method of calculating the duration of a modified plan and concluding that plan modification that called for the final payment to be made 60 months from the confirmation of the original plan but 68 months from the commencement of payments under the original plan exceeded the permissible plan duration under § 1329(c)).

(discussing in dicta the different views on how to calculate the duration of a modified plan).

In his treatise, *Chapter 13 Bankruptcy*, Lundin offers a useful overview of the relevant case law addressing this issue, and he observes, correctly, that "[t]he reported decisions fix no clear rule for counting the duration of a modified plan. . . ."[5] Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th Ed., § 256.1, at ¶¶ 1-6, Sec. Rev. June 9, 2004, www.Ch13online.com. In his review of the case law, Lundin ultimately concludes that *In re Evans*, a case that disagrees with *Costen*, offers a persuasive explanation for "why the five-year maximum duration in §§ 1322(d) and 1329(c) should be counted from the date on which the first payment was due under § 1326(a)(1)." Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th Ed., § 256.1, at ¶ 6, Sec. Rev. June 9, 2004, www.Ch13online.com. *See also In re Musselman*, 341 B.R. 652, 656 (Bankr. N.D. Ind. 2005) (discussing Lundin's analysis of the duration of a modified plan under § 1329(c) in the context of deciding the appropriate

---

[5] Unlike Lundin's *Chapter 13 Bankruptcy*, *Collier on Bankruptcy* does not acknowledge a conflict in the case law, and instead simply concludes that "courts have generally measured the time by which payments on the modified plan must end from the first payment due to be paid to the trustee on the original plan after confirmation of the plan, rather than from the first payment made by the debtor to the trustee before confirmation." 8 *Collier on Bankruptcy* ¶ 1329.07 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.) (citing to *Costen*, *Martin*, and *Eves* in support of this proposition, without addressing the disagreement with *Costen* that has emerged outside of the Fourth Circuit).

measure of plan duration under § 1322(d)). I agree.

As explained by the court in *In re Evans*, and as quoted in pertinent part by Lundin,

> The appropriate time from which to calculate the length of the Chapter 13 plan is the date at which the debtor is first obligated to begin making payments. To allow the payment limitation period to begin at confirmation would allow for intentional delays in achieving confirmation to manipulate the mandatory time periods set forth in § 1322(c). Additionally, commencing the time length of the payment period from confirmation would impose an additional burden on the debtors, not authorized by the Code, requiring the making of pre-petition payments due pursuant to § 1326(a)(1), but not counting those payments under the term set forth in the plan. The five-year maximum repayment period imposed by § 1322(c) and § 1329(c) would be impermissibly extended by the amount of time passing between filing and confirmation. . . . [T]he most logical point from which to begin counting the repayment period is at the time the debtor is first required to make payments under § 1326(a)(1).

*In re Evans*, 183 B.R. at 333,[6] quoted in Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th Ed., § 256.1, at ¶ 6, Sec. Rev. June 9, 2004, www.Ch13online.com.

Like the court in *Evans*, I conclude that when measuring the five-year maximum duration of a modified plan, the measurement runs from the date on which the first payment was due under 11

---

[6] The reference to "the making of prepetition payments due pursuant to § 1326(a)(1)" is obviously intended to be a reference to "the making of **pre-confirmation** payments due pursuant to § 1326(a)(1)."

U.S.C. § 1326(a).[7]

II

Although my ruling is based on what I consider to be the straightforward and logical reading of § 1329(c), it is also instructive to note that the form of plan typically used in this jurisdiction, and used by the debtors in this case, sets a deadline for the first payment due under the plan. Under the terms of the debtors' original plan as proposed and as ultimately confirmed, it was specified that "[t]he debtor[s] shall commence proposed plan payments as required by 11 U.S.C. § 1326(a)(1)." Thus, the first payment that was due under the debtors' proposed plan - pursuant not just to the Bankruptcy Code but also pursuant to the *terms* of the proposed plan - was the initial proposed plan payment required by § 1326(a), which, unless ordered otherwise, was due "not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier . . . ."

[7] The trustee observes that debtors often rely on the *Costen* line of cases when it works to their advantage to extend the term of the plan beyond sixty months. When a debtor either proposes or consents to such a modification, and no other party in interest objects, the uncertainty in the case law regarding § 1329(c) has, historically, given this court the flexibility to confirm such modified plans insofar as the existence of case law supporting the trustee's view rendered such plans, in the opinion of the court, not patently unconfirmable under the law. And when a debtor completes plan payments beyond a 60-month deadline under the terms of a confirmed plan, nothing appears to prevent the court from permitting the debtor's tardy completion of plan payments. The key point is that only 60 months of payments can be required.

Upon confirmation of the plan, the deadline for making the first plan payment ceased to be a mere matter of what is required under § 1326(a) or what was proposed by the debtors under their proposed plan, but rather, at that juncture it also became the binding schedule for making payments under the confirmed plan - a schedule pursuant to which the first payment was due 30 days after the petition date. That fixes as well the duration of the further payments to be made under the modified plan.

Once the plan was modified, the increased monthly payment amount (based on the debtors' increased income) kicked in and was to last until the end of the 59-month period remaining after the date that § 1326(a) fixed as the date for commencing plan payments. The modification of the plan did not result in 67 months of plan payments being required as would be the case if I were to adopt the trustee's position. As discussed earlier, under a variable rate plan, a debtor can be required to pay her projected disposable income for at most 60 months. The same is true of a variable rate plan and modifications of the plan based on increases in projected disposable income: only 60 months of payment of the debtor's projected disposal income can be required, and pursuant to § 1326(a), those payments are to commence 30 days after the order for relief.

III

An order follows.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.